# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2386-24

IN THE MATTER OF THE
DENIAL OF THE APPLICATION
FOR A FIREARMS PURCHASER'S
IDENTIFICATION CARD BY
P.J.M.[1]

_____

Submitted June 3, 2026 – Decided July 2, 2026

Before Judges Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County.

Evan F. Nappen, PC, attorney for appellant P.J.M. (Louis P. Nappen, on the brief).

LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent State of New Jersey (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] We use initials pursuant to Rule 1:38-3(d)(10).

P.J.M. appeals a February 27, 2025 order denying his appeal from a denial of his application for a New Jersey Firearms Purchaser Identification Card (FPIC) because its issuance "would not be in the interest of public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5). We affirm substantially for the reasons stated in Judge Mark P. Tarantino's oral decision.

I.

P.J.M. first obtained an FPIC in 1995 and acquired nineteen firearms. On June 11, 2019, the Trenton municipal court issued a temporary restraining order (TRO) against P.J.M. following an incident where he assaulted his then-wife, R.M. In her statement to police, R.M. reported P.J.M. "accused her of cheating and the argument escalated, he poured water on her head and grabbed her by the shirt and stomach. He pushed her, resulting in her falling on the floor." Police took photographs to document R.M.'s visible signs of injury, including "redness and swelling to the right side of her head by her right eye, bruising to the right side of her stomach and swelling to her right knee."

The State filed simple assault charges against P.J.M., and the Trenton Police Department seized his weapons. After P.J.M. pleaded guilty to a local ordinance violation in December 2019, the police returned his weapons.

A-2386-24

On February 7, 2023, P.J.M.'s daughter, S.M., expressed concern about P.J.M.'s treatment of her grandmother, J.M. Hamilton Township Police conducted a welfare check. On arrival, J.M. informed police that P.J.M. had been caring for her following a recent surgery. She believed he was attempting to have her placed in a full-time care facility in order to gain control of her assets. She also told police P.J.M. had disabled the phone lines in her home, took her cell phone and car keys, and prevented her from communicating with others. J.M.'s brothers confirmed P.J.M. was attempting to civilly commit her.

On February 8, J.M. obtained a TRO against P.J.M., and he surrendered his firearms to the Hamilton Township Police Department. The TRO was dismissed on March 15, 2023. Thereafter, the Mercer County Prosecutor's Office authorized return of P.J.M.'s weapons. However, Hamilton Police did not return P.J.M.'s firearms because he had not updated his FPIC to reflect a change of address from Hamilton Township to Pemberton Township, where he had moved in the interim.

In January 2024, P.J.M. applied for a change of address with the Pemberton Police Department (PD). See N.J.S.A. 13:54-1.11(a) (requiring persons to apply for a duplicate FPIC when the original card is "lost, stolen, or . . . a change of residence" occurs). The Pemberton PD initiated an investigation

as required under the regulations for any application for an FPIC or duplicate. See In re Application of Boyadjian, 362 N.J. Super. 463, 466 (App. Div. 2003) (explaining regulations require a "full compliance review investigation" when a duplicate FPIC is sought following a change in residence). In its investigation, the Pemberton PD learned P.J.M. had a history of domestic violence and determined he presented public health and safety concerns. The Pemberton PD further determined P.J.M. had falsely indicated on his application he had not previously had a firearms license revoked or refused. On March 27, Pemberton Police Chief Jonathan Glass issued the denial. After the denial, P.J.M. contacted Chief Glass by telephone. Following the call, Chief Glass conducted additional inquiries into P.J.M.'s application based on his representations. After completing further investigation, Chief Glass issued a subsequent letter on May 31, 2024, again denying the application.

P.J.M. appealed to the Law Division. On February 21, 2025, Judge Tarantino conducted a hearing to review the denial of P.J.M.'s application. Chief Glass testified on behalf of the State, and P.J.M. testified on his own behalf. The parties agreed to a stipulation regarding the proposed testimony of Pemberton Police Aide, Amanda Willich.

A-2386-24

At the start of the hearing, the State moved nineteen exhibits into evidence. P.J.M. raised hearsay concerns about certain exhibits. The judge admitted the exhibits in evidence, noting the court could consider hearsay. However, the judge assured counsel he would not consider any such hearsay if he determined the exhibits were unreliable. P.J.M. did not introduce exhibits on his behalf. The judge denied P.J.M.'s appeal in an oral decision that same day.

In his decision, Judge Tarantino found Chief Glass credible, noting he

> was professional, he showed no emotion, showed no special interests. . . . He gave straight answers. . . . There were no contradictions in his testimony. . . . The Chief's main point is the domestic violence, focusing on the domestic violence and having a concern for public health and safety, which this [c]ourt shares that concern.

By contrast, the judge found P.J.M. to be

> marginally credible and here's why. He gave prompt answers, he's intelligent. He has an even tone, good demeanor.
>
> But on cross examination he wasn't giving straight answers. The Prosecutor had to work a little bit to get him to answer on some of these questions. And he was hesitant to answer. So he is marginally credible.

A-2386-24

The judge denied P.J.M.'s application, first on the basis of falsification, rejecting P.J.M.'s argument that his weapons had only ever been seized, never confiscated:

> the [c]ourt will deny the appeal for the following reasons. First of all, the falsification. It's not were your weapons seized, were your weapons confiscated . . . what's a forfeiture, what's a seizure. That's beside the point.
>
> The point is, question, ["A]re you subject to any court order issued pursuant to domestic violence[?"] The answer is yes. And even if that court order changed[,] the answer is yes. And that's a falsification.

The judge continued:

> But I'm . . . going to deny the application . . . for [an]other reason, danger to public health, safety[,] and welfare. Here's what the [c]ourt is focusing on. [The] 201[9] domestic violence incident alone is very serious. It seems to be a rather vicious attack on the ex-wife. This raises public safety concerns. The ex-wife was injured. And that's in S-9, PA-61[,] and 69 are the references.
>
> And there are two other incidents, of lesser concern, which he exhibited aggressive and threatening behavior, chasing after children, that's in S-3, with the PA-31. And the harassment yelling at neighbor, that is in S-7. So the [c]ourt has to consider those incidents, mainly the domestic violence incident is the concern.
>
> . . . .

A-2386-24

. . . [T]he facts are the facts. And the facts, the concern for domestic violence incidents involving ex-wife, R[.M.], is the determining factor here.

Defendant appeals, raising the following arguments:

POINT I

THE COURT BELOW ERRED BY DENYING THE APPEAL SOLELY UPON HEARSAY.

POINT II

THE COURT BELOW SHOULD BE REVERSED FOR FAILING TO FIND THAT THE APPELLANT LACKED "CHARACTER OF TEMPERAMENT" AS REQUIRED UNDER N.J.S.A. 2C:58-3C(5).

POINT III

N.J.S.A. 2C:58-3C(5) SHOULD BE FOUND UNCONSTITUTIONAL.

POINT IV

THE COURT BELOW ERRED BY FAILING TO PROVIDE A DOCKET NUMBER FOR THE APPEAL.

II.

N.J.S.A. 2C:58-3(c)(5) provides:

A handgun purchase permit or firearms purchaser identification card shall not be issued:

. . . .

(5) To any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm[.]

"[A] judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis." State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004). In reviewing such determinations, we accept the trial court's findings so long as they are supported by substantial, credible evidence. In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)).

A denial of an FPIC application by a police chief is subject to de novo review in the Law Division. In re Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003) (citing Weston v. State, 60 N.J. 36, 45 (1972)). "The [State] has the burden of proving the existence of good cause for the denial by a preponderance of the evidence." Ibid. (citing Weston, 60 N.J. at 46). "We review a trial court's legal conclusions regarding firearms licenses de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015) (citing In re Sportsman's Rendezvous Retail Firearms Dealer's License, 374 N.J. Super. 565, 575 (App. Div. 2005)).

A-2386-24

Regarding P.J.M.'s first point, the trial court may consider hearsay evidence, provided the court's findings are not entirely based on hearsay. Weston, 60 N.J. at 51. Evidence that ordinarily would be excludable as hearsay may be admissible in a gun permit hearing if it is "of a credible character — of the type which responsible persons are accustomed to rely upon in the conduct of their serious affairs . . . ." Ibid.; see also In re Dubov, 410 N.J. Super. 190, 202 (App. Div. 2009) ("Weston recognizes that the usual rules of evidence barring hearsay testimony are not controlling in an appeal from the denial of an application for a gun purchaser permit." (citing Weston, 60 N.J. at 50-53)). Hearsay evidence must be corroborated by substantive and competent proof. Weston, 60 N.J. at 51.

Here, reports of domestic violence incidents were recognized as an exception to our hearsay rules. See N.J.R.E. 803(c)(8)(A) (a written statement "made by a public official of . . . an act, condition, or event observed by the official if it was within the scope of the official's duty . . . to observe the act, condition, or event reported and to make the written statement" is admissible); N.J.R.E. 803(c)(6) (a "record of acts, events, or conditions . . . made at or near the time of observation by a person with actual knowledge or from information supplied by such a person . . . in the regular course of business" is admissible).

A-2386-24

In the case of the 2019 domestic violence incident, police reports were accompanied by corroborating photographic evidence taken by the police. Those reports were thus properly admitted, and the judge aptly relied on them in support of his findings.

Regarding P.J.M.'s second point, we discern no error in the judge's decision to deny the application without explicitly stating that P.J.M. lacked the "character of temperament" necessary for issuance of an FPIC. See N.J.S.A. 2C:58-3(c)(5). After reviewing the record, we are satisfied the judge articulated a valid basis for denial, namely, P.J.M.'s "aggressive and threatening behavior" and history of domestic violence. Those acts establish a deficiency in the character and temperament necessary for issuance of an FPIC, warranting denial under N.J.S.A. 2C:58-3(c)(5) where issuance would not serve the public health, safety, or welfare, even absent a talismanic recitation of that statutory language. J.W.D., 149 N.J. at 115.

Third, we reject P.J.M.'s contention that N.J.S.A. 2C:58-3(c)(5) is unconstitutional. See In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 163 (App. Div. 2023) ("We hold that N.J.S.A. 2C:58-3(c)(5) does not violate the Second Amendment."); In re Winston, 438 N.J. Super. 1, 5 (App. Div. 2014) (rejecting constitutional challenge of

N.J.S.A. 2C:58-3(c)(5) on Second Amendment grounds).

Fourth and finally, we reject P.J.M.'s contention he was prejudiced by the absence of a docket number assigned to his case. We recognize the importance of an Administrative Office of the Court's Directive for assigning "a universal numbering protocol for docketing and tracking appeals . . . from the law enforcement denial to issue [FPIC]s," Admin. Off. of the Cts., Admin. Directive No. 14-22, Criminal – Gun Permit Procedures, at 2 (Dec. 22, 2022), but the clerk's failure to adhere to this Directive had no impact on presentation of the merits of P.J.M.'s case or its review on appeal. See R. 2:10-2 ("[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

11